UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| JUDY A. ATKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: _____ |
| ) | |
| SMYTH COUNTY VIRGINIA ) | |
| SCHOOL BOARD, ) | |
| ) | |
| and ) | |
| ) | |
| KEVIN LEONARD, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

The Plaintiff, Judy A. Atkins, by counsel, files this complaint against Defendants pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq. (Title VII). Ms. Atkins seeks redress for gender discrimination and workplace harassment resulting in constructive termination.

## INTRODUCTION

Judy A. Atkins began working for the Smyth County School Board in Marion Virginia in 2005 as a substitute teacher. She was later hired full time as a cook in the cafeteria of Atkins Elementary School. During 2008, she was promoted to the position of Cafeteria Manager. After this promotion, Kevin Leonard, a Smyth County School Board employee, a custodian at Atkins Elementary, began harassed, assaulted and intimidated Ms. Atkins during her

work. Mr. Leonard created an unbearable, sometimes violent, work environment causing her severe emotional and physical distress. Because the Smyth County School Board and its agents took no action, and, fearing for her health and safety, Plaintiff was forced to quit her job.

## Nature of Claim

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq. (Title VII).

2. Jurisdiction is vested in this Court by 28 U.S.C. § 1331.

3. Venue is proper in this district under 28 U.S.C. § 1391.

## Procedural Status

4. On May 29, 2018, Plaintiff timely filed an administrative Charge of Discrimination and the Equal Employment Opportunity Commission ("EEOC")

5. On September 27, 2018, the EEOC issued a Notice of Right to Sue letter.

6. This action is timely filed and all procedural prerequisites to suit have been met.

## Parties to this Action

7. Judy A. Atkins ("Ms. Atkins" or "Plaintiff') is a female, American citizen of the United States and a resident of Atkins, Virginia, in Smyth County, Virginia, within the jurisdiction of this Court.

8. Smyth County School Board. ("SCSB" or "School Board") is the publically appointed body responsible for the operation of Atkins Elementary School

("AES"), including its school cafeteria and employed Ms. Atkins and Mr. Leonard. Its business address is 121 Bagley Circle, # 300, Marion, VA 24354.

9. Kevin Leonard is a resident of Smyth County, Virginia and was a employed to work as a custodian by SCSB at AES located in Atkins, Virginia at all times material to this action. Defendant Leonard and plaintiff are related by marriage— he is married to plaintiff's sister. Their respective families are estranged and have not associated for many years including the time both have been employees of SCSB.

**Factual Allegations**

10. The events complained of herein occurred at AES in Smyth County, Virginia.

11. Plaintiff commenced working at SCSB as a substitute teacher in 2005. Ms. Atkins was later hired as a full time cook in the AES cafeteria. In 2008, she was promoted to the position of Manager of the AES cafeteria. The job of Cafeteria Manager included all aspects of preparing and providing lunch and sometimes breakfast, five days a week for the school's children and staff. Her responsibilities included preparation of menus, ordering and purchasing food, food storage, food preparation, supervision of cafeteria employees and administration, accounting, and reporting related to the cafeteria.

12. SCSB controlled Plaintiff's terms and conditions of employment.

13. Plaintiff regularly worked the hours of 6:00 a.m. to 3:00 p.m., Monday through Friday; though frequently worked till 5:00 p.m. or later to

3

complete necessary functions.

14. Ms. Atkins had no authority or supervisory control over Defendant Leonard.

15. SCSB controlled the terms and conditions of Mr. Leonard's employment.

16. At all times material to this action, Mr. Leonard was responsible for removing filled trash containers mounted on wheels from the cafeteria's dining room and kitchen of AES to outside trash dumpsters. It was not Mr. Leonard's job to clean the cafeteria. Cafeteria employees cleaned the dining room and kitchen using a dedicated closet and equipment located in the cafeteria and filled the dedicated trash containers.

17. After Mrs. Atkins was promoted to Cafeteria Manager Mr. Leonard began a pattern of stopping what he was doing—mopping, sweeping, moving containers, talking—whenever he saw her and would fix his eyes on her and follow her with his eyes until she was out of his sight, actions generally referred to as staring, leering, stalking, gawking, gaping, etc. While gawking he would also "make faces" at her by snarling and grimacing. At times, he would also mumble in a menacing tone but not loud enough to be understood. This conduct disturbed and scared Mrs. Atkins and interfered with her ability to do her work.

18. Mrs. Atkins did nothing to cause, invite or provoke such conduct, rather she attempted in as much as possible to avoid him.

19. Mrs. Atkins reported these events to her supervisor Mr. Phillip

Griffin and the AES school principal Mr. Gary Roberts. They responded by saying that "boys will be boys" and "he's harmless" and "that's just how he is." No action was taken to stop this behavior.

20. Mr. Leonard's behavior described above, was also directed at other women who worked in the cafeteria and sometimes female teachers and staff. Employee Buck, a woman who previously worked in the cafeteria, reported to Mr. Griffin that Mr. Leonard's conduct "scared her". She was told, "that's how he is." No action was taken. The conduct continued. Ms. Buck resigned.

21. Mr. Leonard used cafeteria and kitchen space as if it were his own when he had no authority to be there and his presence violated health department regulations. As he moved the cafeteria trash containers from the dining room to the kitchen backdoor, Mr. Leonard would intentionally and routinely bump his trash container into Mrs. Atkins' chair in which she was sitting or against her desk. Mr. Leonard had a clear path without this personal contact, then snarl and grimace at Mrs. Atkins creating work interruptions, fear and anxiety. These were reported to Mr. Griffin who dismissed them as insignificant.

22. Mr. Leonard set up a table for his personal use in the kitchen area near Mrs. Atkins' desk. Mr. Leonard used this table for his meals and breaks and when doing so, would stare and gawk at Mrs. Adkins and the other women working in the kitchen. Mr. Leonard had no work responsibilities in the dining room and kitchen other than to move trash containers out the back door to the

5

dumpster, usually twice a day. Mrs. Atkins complained to her supervisor Mr. Griffin, who did nothing. Mr. Leonard began using one of the kitchen refrigerators for his personal storage including food and water and drink containers. He placed a label on the shelf that said "keep off". He did not ask permission for this use which could not have been granted because it violates health department regulations.

23. Mr. Leonard's bullying and stalking conduct toward Mrs. Atkins became more frequent and more physically intimidating over 2016 and 2017.

24. The above described behaviors continued and the following events occurred in late 2017:

    a. On or about September 13, 2017, Mr. Leonard came up behind Plaintiff and forcefully hit her by pushing a trash container into her, almost knocking Plaintiff off her feet. Mr. Leonard then scowled and snarled menacingly at her.

    b. In or about early October 2017, Mr. Leonard used a leaf blower to blow trash and gravel onto the vehicles of Plaintiff and other cafeteria staff. This happened on a regular basis. He would also place trash and paper under Ms. Atkins' and other women's windshield wipers.

    c. In or about late October 2017, Mr. Leonard rudely and violently demanded that Plaintiff "get her rear end over at the dishwasher and wash dishes." This incident occurred on a day when the cafeteria was using disposable paper plates, foam trays, cups and utensils. This occurred often

when the cafeteria was short staffed or when there were special guests and parents joining the children for lunch. Mr. Leonard always became angry and abusive to Ms. Atkins due to the increased work the disposable trays caused him. This occurred on a regular basis. Mrs. Atkins reported this incident to her supervisor Mr. Griffin, who responded, "Well, you know why he did that don't you? "That gave him more work." Mr. Leonard's abusive conduct toward Mrs. Atkins was never addressed.

       d.      On or about October 31, 2017, while Ms. Atkins was handing out Halloween treats to students at one of the two cafeteria doors, Mr. Leonard forcibly grabbed her cart and the tray in her hand and jerked her out of the doorway while yelling, "get your hindend out of the way and go do your job." Mrs. Atkins reported this incident to her Supervisor Mr. Griffin and the Principal, Gary. She retold his continuing conduct and her increasing fears of his disturbing bullying and gawking. This event resulted in strained tendons for which Mrs. Atkins wore a sling for three days.

       e.      On or about November 30, 2017, Plaintiff moved a trashcan to sweep under it. Mr. Leonard assaulted her by rushing at her throwing the can back at Plaintiff, almost knocking her over and raised his back in an intimidating, threatening manner. Mr. Leonard pulled back to make a fist to punch her. He stopped before hitting her. Mrs. Feared he would hit her and knock her down with the trash container. This event was reported to Mr. Griffin. No action was taken.

7

f. In or about early November 2017, Plaintiff found her work computer was not working when she came into work. Technical support determined that the power cords and inputs had been switched and reversed. Mr. Leonard had access to her work area after hours and she perceived he was responsible consistent with his other regular abusive behaviors towards her.

g. In or about mid-November 2017, Plaintiff placed a tray of sliced strawberries in the refrigerator for the next day's use. The next morning the strawberries were found out and turned over in the floor. They had been placed on or near a shelf that Mr. Leonard previously claimed for his personal use, and he had been prohibited from using it by the Health Department. Plaintiff believed Mr. Leonard had vandalized the food because he blamed her for reporting his improper use to the Principal.

h. Mr. Leonard moved around in and used all serving line and kitchen areas as though they were under his control. He served himself from the kitchen side of the serving line— prohibited by the health department. He set up a table near Ms. Atkins' desk, computer and work area in the kitchen where he ate and left his personal belongings, also prohibited, without seeking permission. These events were reported to Ms. Atkins' supervisor Mr. Phillip Griffin and the AES school principal Mr. Gary Roberts. No disciplinary action was taken against him.

25. In late October 2017, Mrs. Atkins and two other women cafeteria

workers met with Mr. Griffin to hear his report on what the school planned to do about their recent complaints of Mr. Leonard's continuing bullying and abusive behaviors. Mr. Griffin advised that the matter had been considered and no changes would be made. Plaintiff was advised that if she didn't like this result she could file a written grievance which she did. Ultimately that grievance was denied largely on the basis that the harassment and bullying was not of a "sexual nature". The investigation of the grievance did not include an interview with Mrs. Atkins nor any of the other women in the cafeteria who were also victims of the harassment and witnesses. The findings were incomplete, one-sided and erroneous.

26. Unknown to Mrs. Atkins on the same day of the foregoing meeting her husband Mr. Atkins came to AES to confront Mr. Leonard for his continued abusive conduct toward Mrs. Atkins.

27. In late October, 2017 as a result of Mr. Leonard continuing to work at Atkins Elementary, Plaintiff was forced to resign out of fear and increased anxiety caused by the work environment.

28. Upon information and belief, Mr. Leonard continues to work at Atkins Elementary.

29. Mr. Leonard committed the acts while performing his duties at and for SCSB and in the execution of the services for which he was employed.

30. As a result of the harassment upon her, Plaintiff suffered lost wages, loss of earning capacity and experienced various physical and emotional symptoms, including without limitation: shame, humiliation, embarrassment,

9

loss of enjoyment of life, mental anguish, inconvenience, fear, fear of the future, emotional pain and suffering, anger, anxiety, depression, diminished self-worth, nightmares, headaches, nausea, panic and sleepless nights.

## COUNT I - RESPONDEAT SUPERIOR

31. Plaintiff repeats the foregoing allegations as if set forth herein at length.

32. Mr. Leonard's harassment of Plaintiff was committed at work while Mr. Leonard and Plaintiff were engaged in work, during work hours and usually in the presence of other employees and students at AES.

33. SCSB is vicariously liable for the assault and harassment by Mr. Leonard of Plaintiff under the doctrine of *respondeat superior* and for its agents' direct knowledge and failure to act.

34. SCSB had opportunities prior to the conduct complained of by Plaintiff to discipline and discharge Mr. Leonard, but it failed to do so, based on similar complaints from other women.

35. If SCSB had taken appropriate action against Mr. Leonard in the past, Plaintiff would not have been continually harassed and frightened by Mr. Leonard.

36. Here, at all times during the actions complained of, Plaintiff and Mr. Leonard were working at AES, for SCSB, the acts occurred at work, during work hours, and in connection with the performance of their

respective job duties.

## COUNT II- SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

37. Plaintiff repeats the foregoing allegations as if set forth herein at length.

38. Mr. Leonard harassed Plaintiff because of her sex, female.

39. More specifically, he targeted her and bullied her until she was forced to resign from her job.

40. The foregoing conduct was so demeaning, harassing, physically threatening and outrageous that these incidents created a hostile work environment based on sex at Atkins Elementary.

41. SCSB acted with malice and reckless indifference to Plaintiff's statutory protected right to be free of gender harassment when it failed to discipline Mr. Leonard for his prior bad acts, and more specifically when it failed to respond reasonably and make competent investigation of her allegations.

42. The foregoing events interfered with Plaintiff's terms, conditions or privileges of employment in violation of Title VII.

## COUNT III - ASSAULT

43. Plaintiff repeats the foregoing allegations as if set forth herein at length.

44. On or about September 13, 2017, Mr. Leonard snuck up behind Plaintiff, striking her and almost knocking her to her feet by shoving a trashcan at her. As he walked away he scowled at Ms. Atkins angrily and

11

violently.

45. On or about October 31, 2017, while Plaintiff handed out Halloween candy to students at one of the dining room doors she asked Mr. Leonard if he would use another door. Mr. Leonard grabbed her hand and the cart holding the candy to jerk her out of the doorway. As he was forcibly moving Plaintiff he yelled, "Get your hind-end out of the way and go do your job." He did this in the presence of children.

46. Defendant is vicariously liable under the doctrine of *respondeat superior* for these separate assaults.

47. Under *respondeat superior* an employer is vicariously liable for an employee's tortious acts committed within the scope of his employment.

48. Plaintiff was terrified and feared for her safety.

## COUNT IV - CONSTRUCTIVE DISCHARGE

49. Plaintiff repeats the foregoing allegations as if set forth herein at length.

50. Plaintiff was working full time in her role as Cafeteria Manager.

51. When SCSB failed to conduct a reasonable investigation of Plaintiff's complaints about the Mr. Leonard's behavior, which was witnessed by a number of her co-workers, and given SCSB's failure to discipline Mr. Leonard at all, much less discharge him, Plaintiff was forced to quit.

52. SCSB failed to competently investigate her complaints or take any action against Mr. Leonard.

53. Any reasonable person would have quit SCSB after enduring what Plaintiff endured.

54. Plaintiff had no legal recourse beyond resignation.

55. Mr. Leonard's conduct establishes the intolerability of the working conditions at AES.

56. SCSB could reasonably foresee the consequences of its actions and failure to act.

57. SCSB ratified the actions of Mr. Leonard by failing to conduct a reasonable investigation of Plaintiff's allegations and by failing to, at a minimum, move him to a different location within the SCSB system, if not fire him, to protect Plaintiff.

## COUNT V— GENDER DISCRIMINATION

### (Hostile Work Environment - 42 U.S.C. § 2000e, et seq.)

57. Plaintiff incorporates by reference paragraphs 51 – 57 of the Complaint as if fully set forth herein.

**58.** By reason of her sex, Plaintiff has suffered unwelcome, severe, and pervasive actions at the hands of Defendant's supervisor, Blake Anderson, which unreasonably interfered with her work performance and created an intimidating, hostile, and offensive work environment in violation of Title VII of the Civil Rights Act of 1964, as amended.

59. As a direct and proximate result of Defendant's actions, plaintiff has suffered, mental anguish, pain, suffering, litigation expense including attorneys' fees, medical

expense, consequential damages and other injury.

WHEREFORE, Plaintiff demands that judgment be entered in her favor against Defendants, and that in addition this Court:

(a) Award Mrs. Atkins compensation for backpay, and loss of earning capacity;

(b) Award Mrs. Atkins compensatory damages in an amount not less than Three Hundred Thousand Dollars ($300,000.00);

(c) Award Mrs. Atkins punitive damages in an amount to be determined at trial for Defendants' reckless indifference for Plaintiff's federally protected rights;

(d) Award Mrs. Atkins's attorneys' fees and costs of this action;

(e) Award Mrs. Atkins such interest as is allowed by law;

**TRIAL BY JURY IS DEMANDED.**

                                          Respectfully submitted,
                                                    Plaintiff,
                                              JUDY A. ATKINS
                                                 By Counsel

/s/   Mary Lynn Tate
Mary Lynn Tate, Esq. (VSB No.: 16085)
Tate Law PC
16006 Porterfield Highway.
Abingdon, Virginia, 24210
Phone: (276) 628-5185
Fax: (276) 628-5045
Email: mltate@tatelaw.com
*Attorney for Plaintiff*