# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **JUDY A. ATKINS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18CV00048 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **SMYTH COUNTY VIRGINIA SCHOOL BOARD, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Mary Lynn Tate, Tate Law PC, Abingdon, Virginia, for Plaintiff; Jennifer D. Royer, Royer Law Firm, P.C., Roanoke, Virginia, for Defendants.*

Plaintiff Judy A. Atkins brings this action under Title VII of the Civil Rights Act of 1964, alleging that her former employer, defendant Smyth County Virginia School Board, and her former coworker, defendant Kevin Leonard, discriminated against her by creating a hostile work environment and constructively discharging her because of her sex. Atkins also brings a claim of assault under state law. The defendants have moved to dismiss the Complaint. For the reasons that follow, I will grant the Motion to Dismiss in part, and deny it in part.

I.

The Complaint alleges the following facts, which I must accept as true for the purpose of deciding the Motion to Dismiss.

Plaintiff Judy A. Atkins began working for defendant Smyth County Virginia School Board ("School Board") as a substitute teacher, and she later became a full-time cook in the cafeteria at Atkins Elementary School in Atkins, Virginia. In 2008, she became the school's Cafeteria Manager. In this role, she was responsible for preparing menus; ordering, storing, and preparing food; supervising cafeteria employees; and the accounting and reporting of the cafeteria's operations.

After Atkins became the Cafeteria Manager, defendant Kevin Leonard, a custodian employed by the School Board at Atkins Elementary School and Atkins' estranged brother-in-law, began a pattern of stopping what he was doing whenever he saw her and staring, leering, and gawking at her. He would also snarl, grimace, and mumble in a menacing tone at her. This conduct disturbed and frightened Atkins and interfered with her ability to work. Leonard also behaved this way towards other women who worked in the cafeteria, as well as female teachers and staff.

Atkins reported this conduct to her supervisor, Phillip Griffin, and the school principal, Gary Roberts. Atkins alleges that they responded that "boys will be boys," "he's harmless," and "that's just how he is," and they did not take any action to stop Leonard's conduct. Compl. ¶ 19, ECF No. 1. Another cafeteria employee, identified by Atkins as "Employee Buck," told Griffin that Leonard's

conduct frightened her, and Griffin responded that "that's how he is," and took no action.  Compl. ¶ 20, ECF No. 1.  Leonard's conduct continued, and Buck resigned.

When Leonard would move garbage cans from the dining area to the back of the kitchen, he would routinely and intentionally bump the garbage can against Atkins' chair or desk while she was seated at it, although there was space for him to pass without touching her.  He also snarled and grimaced at her.  This conduct frightened Atkins and interrupted her work.  Leonard also set up a table in the kitchen for his meals and breaks, where he stared and gawked at Atkins and other women working in the kitchen.  Atkins reported this behavior to Griffin, but he dismissed it as insignificant and took no action.

Leonard's conduct became more frequent and intimidating to Atkins in 2016 and 2017.  During this time, Leonard continued to stare, gawk, and snarl at her.  In addition, the following events occurred between September and November 2017.  Leonard forcefully pushed a garbage can into Atkins from behind her, almost knocking her off her feet, while snarling and scowling.  Leonard also regularly used a leaf blower to blow trash and gravel onto Atkins' and other cafeteria workers' vehicles.  He also placed trash and paper under the windshield wipers of Atkins' and other women's vehicles.

On a day when the cafeteria was using disposable dishes and utensils, Leonard demanded that Atkins "get her rear end over at the dishwasher and wash dishes." Compl. ¶ 24(c), ECF No. 1. Leonard always became angry and abusive towards Atkins when the school used disposable products in the cafeteria because it increased his workload. Atkins reported this incident to Griffin, who did not address Leonard's conduct.

When Atkins was giving Halloween candy to students, Leonard forcefully grabbed the cart in her hands and jerked her out of the cafeteria doorway, yelling, "get your hindend out of the way and go do your job." Compl. ¶ 24(d), ECF No. 1. Atkins suffered strained tendons as a result of this incident. When Atkins was moving a garbage can to clean under it, Leonard rushed at her and threw the garbage can towards her, almost knocking her over. He also made a fist and threatened to punch her, but stopped before hitting her. Atkins reported these encounters, along with Leonard's continued bullying and gawking, to Griffin and Roberts, but they did not take any action.

One day when Atkins arrived at work, she found that her computer was not working. The school's technical support determined that the power cords and inputs had been switched. Another day, Atkins discovered that a tray of strawberries that she had left in the refrigerator had been dumped on the floor.

Atkins suspected that Leonard had interfered with her computer and the strawberries.

In late October 2017, Atkins and two other female cafeteria workers met with Griffin to discuss the school's response to their complaints regarding Leonard's behavior. Griffin told them that the matter had been considered and no changes would be made, and that they could file a written grievance if they were unsatisfied with this result. On the same day, Atkins' husband came to the school to confront Leonard regarding his continued harassment of Atkins. At that time, Atkins was not aware of her husband's actions.

Atkins filed a written grievance regarding Leonard's behavior, which was denied because the harassment and bullying was not sexual in nature.[1] Because of

---

[1] Atkins did not file a copy of this written grievance with her Complaint, but the defendants submitted a copy of it as Exhibit A to their Motion to Dismiss, and they rely on it in the Motion. Atkins has moved to exclude Exhibit A, arguing that it is extraneous material outside the pleadings and offers no dispositive information, and thus admitting it would require the court to treat the Motion to Dismiss as a motion for summary judgment under Federal Rule of Civil Procedure Rule 12(d). In reviewing a motion to dismiss, the court may consider documents attached to the motion, so long as they are integral to the complaint and authentic. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Atkins' Motion to Exclude does not challenge the authenticity of Exhibit A. Moreover, the written grievance is incorporated by reference in the Complaint, and it goes to the issue of the School Board's knowledge of Leonard's conduct. Accordingly, I find that it is integral to the Complaint, and I will consider it without converting the Motion to Dismiss to a motion for summary judgment.

Leonard's continued employment at the school and the fear and anxiety Atkins felt in her workplace, Atkins resigned.[2]

Thereafter, Atkins filed the present Complaint against the School Board and Leonard. The Complaint asserts that the action is brought under 42 U.S.C. § 2000(e)-2 ("Title VII"). Compl. ¶ 1, ECF No. 1. Count One of the Complaint alleges that the School Board is vicariously liable for Leonard's conduct under the doctrine of respondeat superior; Count Two alleges that Leonard's conduct constituted sexual harassment in violation of Title VII; Count Three asserts a state law claim of assault against Leonard; Count Four contends that Adkins was constructively discharged because the School Board failed to adequately investigate or take any action against Leonard; and Count Five alleges that Leonard's conduct created a hostile work environment in violation of Title VII.

Atkins alleges that she suffered lost wages, loss of earning capacity, inconvenience, anxiety, depression, nightmares, headaches, nausea, panic, and other forms of emotional pain and suffering as a result of Leonard's conduct toward her. She seeks back pay, front pay, compensatory and punitive damages, and attorney's fees. The defendants have moved to dismiss the Complaint

---

[2] Atkins alleges in the Complaint that she resigned in late October 2017; however, she also alleges that some of Leonard's conduct occurred in November 2017, and her written grievance is dated January 22, 2018, suggesting that she resigned sometime after this date.

pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion to Dismiss is ripe for decision.[3]

## II.

Federal pleading standards require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss, the complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a pleading, the court accepts as true all well-pled facts and construes those facts in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591

---

[3] Defendants filed and served electronically their Motion to Dismiss on April 10, 2019. Under the court's Local Rules, any response to the motion was due no later than April 24, 2019. W.D. Va. Civ. R. 11(c)(1). Atkins filed her response in opposition to the motion on May 6, 2019. The defendants request that the court not consider the untimely response. I am told by the Clerk's Office that Atkins' attorney advised that the delay was due to computer problems. Under these circumstances, I will consider the response. Even if I refrained from considering Atkins' response, I would still be obligated to consider the Motion to Dismiss on its merits. *See Altizer v. Town of Cedar Bluff, Va.*, No. 1:14-CV00007, 2014 WL 2535057, at *2 (W.D. Va. June 5, 2014); *cf. Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (holding that when considering a motion for summary judgment, the court "must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law").

I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

F.3d 250, 255 (4th Cir. 2009). A complaint does not need detailed factual allegations to survive a motion to dismiss; however, it must have more than labels and conclusions or a recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

A.

I will first consider Atkins' claims arising under Title VII. Atkins has separated her claims of sexual harassment creating a hostile work environment (Count Two) and sex-based discrimination creating a hostile work environment (Count Five).[4] However, I will address these claims together, as "[a] hostile work environment due to sexual harassment is discrimination based on sex." *EEOC v. Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d 647, 653–54 (E.D. Va. 2008) (citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 64–66 (1986)).

In Counts Two and Five, Atkins alleges that Leonard's conduct was unwelcome, pervasive, and so demeaning, harassing, physically threatening, and outrageous that it created a hostile work environment in violation of Title VII. She also alleges that his conduct towards her was because of her sex. In their Motion to Dismiss, the defendants contend that Atkins has failed to state a hostile work environment claim against the School Board because Leonard's behavior was not

---

[4] Count Five alleges that Atkins experienced sex-based discrimination by her supervisor, Blake Anderson. However, the Complaint does not contain any facts regarding Blake Anderson. I will construe Count Five as relating to the alleged discrimination by Leonard and the School Board.

based on her sex and was not sufficiently severe or pervasive, and because his conduct was not imputable to the School Board. They also argue that to the extent Atkins brings Counts Two and Five against Leonard, she has failed to state a claim under Title VII because it only proscribes acts by employers.

Title VII of the Civil Rights Act of 1964 makes it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *EEOC v. R & R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001). To state a hostile work environment claim, a female plaintiff must show that the alleged conduct "(1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003).

As to the first element, employees can demonstrate that conduct is unwelcome by voicing their objection to it to the alleged harasser or to the employer. *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 328–29 (4th Cir. 2018).

Here, the defendants do not dispute that Leonard's alleged conduct was unwelcome to Atkins.

As to the second element, "[a]n employee is harassed or otherwise discriminated against because of his or her sex if, but-for the employee's sex, he or she would not have been the victim of the discrimination." *Wrightson v. Pizza Hut of Am., Inc.*, 99 F.3d 138, 142 (4th Cir. 1996) (internal quotation marks omitted). "The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Onacle v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (citation omitted). Plaintiffs may prove sex-based discrimination even though they are not subjected to sexual advances or propositions. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011). For instance, they may show that conduct constituted discrimination based on sex by showing that they were harassed "in such sex-specific and derogatory terms . . . to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace" or by offering direct comparative evidence about how the alleged harasser treated members of both sexes. *Onacle*, 523 U.S. at 80–81. Evidence that the alleged harasser targeted multiple members of the plaintiff's sex may give rise to an inference that the treatment was because of sex. *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 311 (D. Md. 2015); *see also Lumoa v. Potter*, 351 F.

Supp. 2d 426, 435 (M.D. N.C. 2004) (finding that the plaintiff failed to put forth evidence to support an inference that her injury was because of her sex in part because she did not show that the alleged harasser directed his behavior only at women). In addition, a plaintiff's claim may proceed even though the discrimination was not solely because of sex, as long as sex was one cause. *Wrightson*, 99 F.3d at 144.

Here, the defendants argue that Atkins has failed to satisfy this element because she does not allege that Leonard's conduct was sexual in nature or involved sex-specific derogatory terms, and she does not otherwise allege facts sufficient to show that Leonard's conduct was because of her sex and not other animus he felt towards her as her brother-in-law. However, I find that at the motion to dismiss stage, Atkins has alleged facts making it plausible that Leonard's conduct was because of her sex. Atkins was not required to show that Leonard was motivated by sexual desire or that he used sex-specific language. Instead, she alleges that Leonard's conduct was directed only at female employees — she alleges that his leering, snarling, and grimacing was directed at her and other female employees, and he used a leaf blower to blow trash onto female employees' vehicles. She also alleges that other women were frightened by Leonard's conduct and joined her in raising complaints about it. Although further discovery may

reveal otherwise, these facts support an inference that Leonard's conduct towards Atkins was because of her sex at this stage in the proceedings.

The third element of a hostile work environment claim — that the conduct was so severe or pervasive as to create an abusive work environment — has both subjective and objective components. *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). Plaintiffs must show that they did perceive, and a reasonable person would perceive, the environment to be abusive or hostile. *Id.* In conducting the subjective inquiry, courts need only look at the testimony of the complaining witnesses. *R & R Ventures*, 244 F.3d at 339. "In conducting the objective inquiry, courts should examine all the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely offensive; and (4) whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks and citation omitted). Simple teasing, offhand comments, and isolated incidents, unless extremely serious, do not amount to a sufficiently abusive or hostile environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

The defendants contend that Atkins has failed to satisfy the objective component of this element because Leonard did not physically touch her, subject her to demeaning epithets, comment about her body, or show her graphic depictions of sexual acts; there was no power disparity between Atkins and

Leonard; and Leonard's conduct was not sufficiently frequent. However, I find that although some of Leonard's alleged conduct may not be sufficiently severe or pervasive, Atkins has alleged conduct sufficient to show that a reasonable person would perceive the environment to be hostile. Atkins has alleged that Leonard's conduct occurred frequently — he leered at her whenever he saw her, and he routinely hit her chair with a garbage can while she was seated at it. In addition, Atkins has alleged conduct that was physically threatening — Leonard hit her from behind with a garbage can; threw a garbage can at her; forcefully pulled a tray from her hands, causing injury; and raised his arm and threatened to punch her. Moreover, the physical contact that Leonard made with Atkins on multiple occasions, although with a garbage can rather than his person, is severe conduct that plausibly interfered with her work performance.

As to the fourth element — whether the alleged harasser's conduct was imputable to the employer — the employer's liability depends on the status of the harasser. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). If the harasser is the victim's coworker, the employer is liable only if it was negligent in controlling working conditions. *Id.* In other words, the employer is liable only "if it knew or should have known about the harassment and failed to take effective action to stop it by responding with remedial action reasonably calculated to end the harassment." *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 498 (4th Cir. 2015)

(internal quotation marks, citation, and alterations omitted). In evaluating the employer's response, courts may consider the promptness of any investigation, the specific remedial measures taken, and the effectiveness of those measures. *Id.*

The defendants argue that Atkins has failed to satisfy this element because, although she reported Leonard's conduct to Griffin and Roberts, she did not report any conduct showing sex-based harassment, and thus the School Board was not on notice of such harassment. The defendants focus on Atkins' written grievance, which she alleges the School Board investigated but denied after determining that the alleged conduct was not sexual in nature. They argue that in light of this determination, remedial action was not required, and the School Board was not negligent in controlling working conditions. I disagree with the defendants and find that Atkins has alleged facts making it plausible that the School Board was negligent. First, the employer need only know of the harassment for the conduct to be imputed to it; employees are not required to satisfy the elements of a hostile work environment claim when notifying their employers of harassment. Moreover, although the School Board investigated Atkins' written grievance, it failed to take any remedial action, and it failed to investigate or take remedial action in response to Atkins' various verbal complaints regarding Leonard's conduct. Accordingly, Atkins has alleged facts making it plausible that the School

Board was negligent in controlling working conditions and thus Leonard's conduct can be imputed to it.

For these reasons, Atkins has stated a hostile work environment claim against the School Board. However, to the extent that she also brings Counts Two and Five against Leonard, she has failed to state a claim against him because Title VII only governs acts by employers.

In Count Four, Atkins' final claim arising under Title VII, she alleges that she was forced to quit her employment as a result of the School Board's failure to investigate and respond to her complaints regarding Leonard's conduct. She also asserts that under the working conditions she has alleged, a reasonable person would have quit.

Title VII encompasses employer liability for a constructive discharge. *Pa. State Police v. Suders*, 542 U.S. 129, 143 (2004). "An employee is considered constructively discharged if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit." *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 425 (4th Cir. 2014) (internal quotation marks and citation omitted). To state a claim of constructive discharge resulting from a hostile work environment, employees must show (1) the deliberateness of the employer's actions, motivated by discriminatory bias, and (2) the objective intolerability of the working conditions. *Id.* "Deliberateness exists only if the

actions complained of were intended by the employer as an effort to force the employee to quit." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985) (internal quotation marks and citation omitted). The employer's intent may be inferred through circumstantial evidence, including a failure to act in the face of known intolerable conditions. *Id.* However, if the employer has treated all employees identically, no particular employee can claim that difficult working conditions show the employer's intent to force that employee to resign. *Id.* Working conditions are objectively intolerable if a reasonable person in the employee's position would have felt compelled to resign. *Id.*

The defendants argue that Atkins has failed to show that her working conditions were objectively intolerable. They note that the last date that Leonard allegedly harassed Atkins was in November 2017, but she did not resign until sometime after she filed her written grievance on January 22, 2018. They contend that because at least two months passed between Leonard's conduct and her resignation, the conduct could not have been sufficiently intolerable. However, I find that even assuming Atkins has shown that her working conditions were objectively intolerable, she has not alleged facts sufficient to show that the School Board's actions were intended to force her to quit. Instead, she alleges that the School Board failed to act in the face of her complaints because it did not find that Leonard's conduct constituted harassment. Moreover, she alleges that her

-16-

supervisors responded to employee Buck's complaints about Leonard in the same way that they responded to hers, making it less likely that the School Board's intent in dismissing complaints about Leonard was to force Atkins to resign.

Accordingly, Atkins has failed to state a constructive discharge claim against the School Board, and to the extent that she also brings this claim against Leonard, it fails because Title VII does not govern his conduct.[5]

B.

I next turn to Atkins' state-law claims of assault and respondeat superior.[6] In Count Three, Atkins alleges that Leonard assaulted her on two occasions — when he hit her from behind with a garbage can, almost knocking her off her feet, and when he grabbed a cart from her hands when she was handing out Halloween

---

[5] The Complaint does not expressly state that the conduct alleged in Count Four is a violation of Title VII. Accordingly, I have also considered whether the allegations constitute constructive discharge under Virginia law. Although the Virginia Supreme Court has not expressly recognized a cause of action for constructive discharge, several lower courts in Virginia have done so. *See, e.g.*, *Padilla v. Silver Diner*, 63 Va. Cir. 50 (Va. Cir. Ct. 2003). The elements of a Virginia constructive discharge claim are similar to those under Title VII. A plaintiff must show that the termination was in violation of "'clear and unequivocal public policy of [the] Commonwealth, that no person should have to suffer such indignities,' and that the employer's actions were deliberate and created intolerable working conditions." *Id.* (quoting *Gochenour v. Beasley*, 47 Va. Cir. 218 (Va. Cir. Ct. 1998). For the reasons stated above, Atkins has not alleged facts sufficient to show that the School Board's actions were deliberate, and thus she has failed to state a constructive discharge claim under Virginia law.

[6] This court has subject-matter jurisdiction over these claims because they derive from the same facts as Atkins' Title VII claims and thus form part of the same case or controversy. 28 U.S.C. § 1367(a); *UMWA v. Gibbs*, 383 U.S. 715, 725 (1966) (determining that federal courts have supplemental jurisdiction over state causes of action if both the state and federal claims at issue "derive from a common nucleus of operative fact").

candy, jerking her out of the cafeteria doorway. She also alleges that the School Board is vicariously liable for this conduct under the doctrine of respondeat superior. The defendants have not moved to dismiss Count Three as against Leonard, but they have moved to dismiss it as against the School Board, arguing that the doctrine of sovereign immunity shields the School Board from state tort law claims.

In Virginia, a governmental entity is generally immune from liability for torts associated with the performance of governmental functions. *Niese v. City of Alexandria*, 564 S.E.2d 127, 132 (Va. 2002). School boards are governmental agencies, and they act in a governmental function in maintaining public schools. *Doe v. Russell Cty. Sch. Bd.*, No. 1:16CV00045, 2017 WL 1374279, at *14 (W.D. Va. Apr. 13, 2017) (applying Virginia law). In particular, a school board's provision of custodial services in a school is a governmental function, and thus school boards are shielded from liability for assaults committed by custodial employees. *Id.* Accordingly, Count Three must be dismissed as against the School Board.

In Count One, Atkins alleges that the School Board is vicariously liable for Leonard's alleged harassment and assault under respondeat superior. The defendants have moved to dismiss this claim, arguing that respondeat superior is not an independent cause of action under Virginia law. I will dismiss Count One

because the doctrine of respondeat superior does not apply to hold the School Board liable in Atkins' claim for assault, for the reasons stated above. Moreover, Title VII claims encompass employer liability for employee harassment, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756–65 (1998), and thus a separate claim against the School Board based in respondeat superior is unnecessary.

III.

For the foregoing reasons, the Motion to Exclude Exhibit A, ECF No. 9, is DENIED, and the Motion to Dismiss, ECF No. 4, is GRANTED IN PART and DENIED IN PART, as follows:

1. Count One of the Complaint as to defendants Kevin Leonard and Smyth County Virginia School Board is DISMISSED;

2. Counts Two, Four, and Five of the Complaint as to defendant Kevin Leonard are DISMISSED;

3. Counts Three and Four of the Complaint as to defendant Smyth County Virginia School Board are DISMISSED;

4. The Motion to Dismiss is DENIED as to Counts Two and Five against defendant Smyth County Virginia School Board; and

5. Counts Two and Five remain as to defendant Smyth County Virginia School Board and Count Three remains as to defendant Kevin Leonard.

It is so **ORDERED**.

ENTER: May 29, 2019

/s/ *James P. Jones*
United States District Judge